COLE, Respondent, vs. THE CHICAGO & NORTHWESTERN RAILWAY COMPANY, Appellant.

*February 6 — February 28, 1888.*

*Master and servant: Negligence: Temporary work outside of ordinary employment.*

When an employee of mature years and of ordinary intelligence and experience is directed to do a temporary work outside of the business he has engaged to do, and consents to do such work, without objection on account of his want of knowledge, skill, or experience in doing such work, no negligence of the employer can be predicated upon that state of facts alone. So *held*, where the foreman of a gang of men engaged in constructing bridges and buildings for a railroad company was directed to take his engine and men and do some switching, and undertook such work without objection, and was injured while personally making a coupling, by reason of the negligence of the engineer and a defect in the coupling apparatus of which the railroad company was not shown to have had knowledge.

APPEAL from the Circuit Court for *Fond du Lac* County. The following statement of the case was prepared by Mr. Justice TAYLOR as a part of the opinion:

This action was brought to recover damages for an injury sustained by the plaintiff while in the employ of said company. The material allegations of the complaint, which were put in issue, are as follows, viz.: "That the plaintiff on the 25th day of November, 1880, at the time of the grievances hereinafter mentioned, was, and prior

thereto had been, in the employment of the defendant as foreman in charge of a gang or crew of men constructing and building bridges and buildings for said defendant railway company along its lines on what was known as the 'Wisconsin Division' of said railway, and was then at work along the line of what was known as the 'Sheboygan and Western Division' of said company's lines. That on said day said plaintiff was engaged in the employment aforesaid, near Peeble station, just out of the city of Fond du Lac, Wisconsin, upon said road, and while so engaged he came into the city of Fond du Lac with the engine hereinafter mentioned, and then received a telegraph dispatch or request from C. X. Smith, who was then trainmaster and acting as superintendent of said Sheboygan and Western Division of the defendant's road and had due authority in the premises, which dispatch requested the plaintiff to switch certain of said company's cars, and do certain switch-work, at the depot of said Sheboygan and Western Division in said city of Fond du Lac. That the performance of such work was no part of the plaintiff's employment above set forth, and was not contemplated in or by the contract made between plaintiff and defendant pursuant to which plaintiff was employed. That, in obedience to said request of said superintendent, the plaintiff, in order to do the said switching, was compelled to couple a certain car to the said locomotive engine hereinafter mentioned. That in performance of said work the said plaintiff was unversed and inexperienced, which fact was well known to the train-master and acting superintendent and said defendant; that, while the plaintiff was so engaged, the engine or locomotive was managed by the engineer then in charge of said engine and employed by the defendant for that work, carelessly and with great negligence, as this plaintiff has been informed and verily believes, so that when plaintiff signaled said engineer to start said

engine forward it was on the contrary backed with great force against this plaintiff. That it was the duty of the defendant company to provide a good, careful, and skilful engineer, and to provide a good, safe, and secure locomotive engine, with good, safe, and secure machinery, appliances, and apparatus; but said defendant did in fact furnish a careless and unskilful engineer, as the defendant well knew, and did furnish a locomotive to convey the materials and perform other work for the gang of men aforesaid in building bridges, buildings, as above alleged, and in doing the said switching aforesaid, which was, as the plaintiff has been informed and verily believes, about twenty-five years old, had become so worn, broken, and decayed as to become unfit for any service upon said road; which defective condition was then, and for a long time prior thereto had been, known by the defendant company. That said engine was a passenger engine, and had no coupling appliances fit to couple on any car except a passenger car. That the coupling apparatus on said engine was of an old pattern, and of an unsafe and dangerous character, while on other engines then used by defendant a newer and safer appliance was in general use. That at the time of the accident hereinafter mentioned one of the long bolts which held the draw-castings on the rear of the tender of said engine, at the place of coupling, was projecting about two inches beyond the plate, either from having been broken or having been drawn out through the rotted wood; whereas it should not have projected at all beyond the face of the casting. The plaintiff, without carelessness or negligence on his part, or knowledge of said projecting bolt, attempted to make the said coupling between the said tender and caboose car, in accordance with the said request of said acting superintendent; and when said engine and tender came back upon him, as above alleged, he endeavored to withdraw his hand, but by reason of the said defects the

same was caught and held fast by the said projecting end of said bolt; his right wrist was pierced by said bolt, and was seriously lacerated, bruised, and injured, so that the same has consequently become and is permanently stiffened and disabled; and at the same time the plaintiff's right hand was wounded and bruised, and the second finger of said hand was so crushed and cut that it had to be at once amputated."

Upon the trial in the circuit court, the plaintiff had a verdict for $2,750 damages; upon which verdict judgment was entered in his favor. From said judgment the railway company appeals to this court. On the trial the jury rendered a special verdict as follows: "(1) Was the injury to the plaintiff caused by catching his glove on the rod from which the jam-nut was gone, which thereby prevented him from withdrawing his hand in time to have escaped injury? *Answer.* Yes. (2) Would the plaintiff have withdrawn his hand in time to have avoided the accident if his glove had not caught on the rod? *A.* Yes. (3) Had there been any change in the original position or condition of the rod, except that the jam-nut was off? If you answer yes then state what the change was. *A.* No. (4) Did the jam-nut come off from the rod at the time of switching out the coal cars on the day the plaintiff was injured? *A.* We believe not. (5) How long had the nut been off from the rod in question? *A.* We do not know; no evidence to show. (6) Had the nut been off from the rod for such a length of time before the accident that the defendant, in the exercise of ordinary care in the inspection of engines and appliances, could have discovered it and put on a new nut? *A.* We do not know; no evidence to show. (7) Did the plaintiff see or know the condition of the rod at the time he attempted to make the coupling? *A.* No. (8) Could the plaintiff, by the exercise of ordinary care, have seen the rod and avoided catching his glove on it? *A.* No. (9) Did

the plaintiff use and exercise ordinary care in attempting to couple the engine and car at the time he was injured? *A.* Yes. (10) Did the rod, in the condition it was, materially increase the danger of making the coupling? *A.* Yes. (11) Did the plaintiff, immediately before he went between the car and tender to make the coupling at the time his hand was caught and injured, signal the fireman to back up? *A.* No. (12) Did the plaintiff, immediately before he went between the tender and car, signal the fireman to start up, and did the engine start up, and then without further signal back up, and injure the plaintiff's hand? *A.* Yes. (13) Did the engine back up without any signals from the plaintiff either to go ahead or back up? *A.* Yes. (14) Was the engine backed up against the car with ordinary care and prudence by those servants of the defendant in charge of it? *A.* No. (15) Was it necessary, in order to shove the car back to the place where it was desired to be left, that the coupling should be made? *A.* No. (16) Did the plaintiff have sufficient knowledge, experience, and intelligence to understand and comprehend the dangers incident to the employment of coupling engines with a Miller engine coupler to cars? *A.* No. (17) If the court shall be of the opinion that the plaintiff is entitled to recover, at what sum do you assess his damages? *A.* $2,750."

At the close of the evidence, the defendant moved the court to direct a verdict in its favor, which motion was denied, and exception was duly taken; and on the rendition of the verdict the defendant moved for judgment upon the special verdict, which was also denied, and exception taken. Various other exceptions were taken by the defendant upon the trial, which need not be here stated or considered.

For the appellant there was a brief by *Jenkins, Winkler & Smith,* and oral argument by *Mr. Jenkins.* To the point that if a servant of full age and ordinary intelligence,

upon being required by his master to perform other duties more dangerous and complicated than those embraced in his original hiring, undertakes the same, knowing their dangers, although unwillingly and from fear of losing his employment, and is injured by reason of his ignorance and inexperience, he cannot maintain an action against the master for such injury, they cited, besides cases cited in the opinion: *Capper v. L., E. & St. L. R. Co.* 103 Ind. 305; *Cummings v. Collins,* 61 Mo. 520; *Hulett v. St. L., K. C. & N. R. Co.* 67 id. 239; *Brown v. Byroads,* 47 Ind. 435; *McGlynn v. Brodie,* 31 Cal. 376; *Russell v. Tillotson,* 140 Mass. 201; 22 Cent. L. J. 446, note; *Atlas Engine Works v. Randall,* 100 Ind. 293; *Chicago & N. W. R. Co. v. Bayfield,* 37 Mich. 205; *Dowling v. Allen,* 74 Mo. 13; *Buzzell v. Laconia Mfg. Co.* 48 Me. 113; *Kean v. Detroit C. & B. Rolling Mills Co.* 33 N. W. Rep. (Mich.), 395; *Thompson v. C., M. & St. P. R. Co.* 14 Fed. Rep. 564.

*Sutherland & Sutherland,* for the respondent, to sustain the proposition that when the servant by direction of his master undertakes extra-hazardous work outside of the scope of his employment he does not take upon himself the risks of such work, cited, besides the cases cited in the opinion: *Miller v. U. P. R. Co.* 12 Fed. Rep. 600, 602; *S. C.* 17 id. 67; *Patterson v. P. & C. R. Co.* 76 Pa. St. 389, 393; *Chicago & N. W. R. Co. v. Jackson,* 55 Ill. 496; *Keegan v. Kavanaugh,* 62 Mo. 232; *Stephens v. H. & St. J. R. Co.* 86 id. 221, 230; Cooley on Torts, 555.

TAYLOR, J.   Upon the argument of the appeal in this court it was not deemed by the learned counsel for the respondent that there was sufficient evidence in the case to sustain a verdict in favor of the respondent on the ground that the defendant was guilty of negligence in furnishing him unsuitable or unsafe machinery for doing his work, or that the company was guilty of negligence in employing a

careless or incompetent engineer for managing the engine which was used in the performance of the work in which he was engaged when the injury was sustained by him. As to the competency of the engineer in charge of the locomotive, no evidence was given, or, if given, no claim was made that he was incompetent. As to the dangerous and unsafe condition of the engine and tender used in doing the switching of the cars to be switched, some evidence was given; but it is not claimed by the learned counsel for the respondent that, on the findings of the jury upon that question, the plaintiff would be entitled to recover upon that ground alone. By an examination of the answers to the first eight questions submitted to the jury as a part of the special verdict, it is very clear that the defect in the tender which it is claimed was the proximate cause of the injury was not shown to have been known to the defendant, nor that it was of such long standing that, in the exercise of ordinary care in that respect, the company ought to have known of such defect.

The only ground for sustaining the verdict in favor of the plaintiff relied upon by the learned counsel for the respondent is that, at the time the plaintiff was directed to do this switching by the company, he was not employed by the company to do such work; that the work of switching in the yard of the defendant was dangerous work, and that the plaintiff was not accustomed to do such work, nor was he acquainted with the danger incident thereto; and that in such case the defendant is liable for the injury if the injury was caused by the negligence of the engineer in charge of the engine, or by a defect in the machinery, whether such defect was known to the defendant company or not. If this rule be as claimed by the learned counsel for the respondent, the findings of the special verdict are perhaps sufficient to sustain the verdict, when aided by the undisputed evidence in the case. By an examination of the

Cole vs. The Chicago & Northwestern R. Co.

findings from the ninth to the sixteenth, inclusive, it will be seen that there is no finding that the defendant company directed the plaintiff to do this work of switching, nor that such work was not such as the plaintiff had been employed to do. These two points are probably supplied by evidence which is not controverted by the defendant, and so the verdict may be aided to that extent. If it be necessary, in order to entitle the plaintiff to recover in this action, to show affirmatively that switching cars in the yard of the company is a more dangerous employment than the employment which the plaintiff had contracted with the defendant to perform, then the verdict would be insufficient for want of any such finding, or, if it be necessary for him to show that the company knew that such employment was more dangerous than the ordinary employment of the plaintiff, then the special verdict would be imperfect in that respect also. The findings upon this part of the case simply show that the plaintiff used ordinary care on his part, and that the injury was either the result of the negligence of the engineer or the defect in the tender, and that the plaintiff had not sufficient experience and intelligence to understand and comprehend the danger incident to the employment of coupling engines with a Miller engine coupler to cars.

The theory of the learned counsel for the plaintiff is that where the master directs his employee temporarily to perform work not contemplated by his contract of employment, and such work is of a dangerous character,— whether more dangerous than his general employment or not is immaterial,— the master becomes liable to protect him while so employed against the carelessness of his employees, and also against any injury he may receive on account of defective machinery, whether the company have any previous knowledge of the defect or not. He claims that the basis of recovery in such case lies in the fact that the master directs the employee to perform a work outside of his usual

employment, which is in its nature a dangerous employment; and that the mere direction of the master to perform such temporary and dangerous work is negligence on the part of the master sufficient to sustain the action of the employee so injured in the performance of such work while he is using ordinary care on his part. Stating it in a little different form, the learned counsel says that the ordinary rule that the employee assumes the dangers incident to his employment is not to be applied to the case where the employee, at the direction of the master, does work, temporarily, outside of his contract of employment.

In order to sustain the judgment in favor of the plaintiff in this case, we think it will be necessary to adopt the rule as stated by the learned counsel to its full extent, because the questions as to whether the temporary employment was more or less dangerous than the ordinary employment of the plaintiff, or whether the defendant was guilty of negligence in directing the plaintiff to do the work in the doing of which he was injured, were not submitted to the jury. The negligence of the defendant upon which the action must be sustained if sustained at all, consists in his directing the plaintiff to do the work, and under that rule the question as to the knowledge of the employee of the dangers incident to the work to be done, or his want of knowledge, would be wholly immaterial.

We are very clear that the broad rule contended for by the learned counsel for the respondent is not sustained by the authorities, nor by the general rules of law which define the relations of the employer and employee. Some of the cases cited by the learned counsel for the respondent may have some general statements in the opinions which give some countenance to the rule as stated by counsel, but when the facts of each case are considered it will, we think, be found that no such broad rule was ever intended to be sanctioned by any of the courts. Whether the employer is

Cole vs. The Chicago & Northwestern R. Co.

guilty of negligence such as will entitle his employee to recover for an injury sustained while doing a temporary work outside of his contract of employment, when such injury is the result of the negligence of a co-employee, or of a defect of machinery not known to the employer, or other cause, is in every case a question of fact to be determined by all the circumstances of the case, and cannot be predicated simply on the fact that he directed his employee to do the work.

In order to make the employer responsible for an injury to his employee while in his employ, the evidence must in every case show that the employer has neglected some duty which he owes to the employee; and no case can, we think, be found where it has been held that the mere fact that the employer requested his employee to perform a temporary work, outside of his ordinary employment, was a violation of any duty which he owes to his employee. Whether it be a violation of such duty depends always upon the surrounding circumstances. If the particular work ordered to be done is of a dangerous character, and one which requires peculiar skill in its performance, and the person directed to perform such work has not the requisite knowledge or skill for doing the work with safety, and such want of skill or knowledge is known, or might be reasonably supposed to be known, to the employer, in that case the direction of the employer to do the work might be justly held to be a violation of a duty which he owes to his employee, even though the employee undertook to do the work without objection or protest upon his part. None of the cases go further than this, and we can see no reason for holding a stricter rule. Counsel says it is well settled that " the employee assumes all the ordinary risks within the scope of his employment." To this proposition no exception can be taken, and there is no need of the citation of authorities to sustain it. It is urged that the converse

of this proposition is also true, viz., that " the servant, when he enters upon the discharge of his duties, does not assume any risks outside of the scope of his employment;" and it is also insisted that when the servant undertakes, at the order of his master, to do work outside of his ordinary employment, there is no presumption that he assumes any of the risks attending such employment.    To sustain this proposition the learned counsel for the respondent cites the following cases: *Ohio & M. R. Co. v. Hammersley*, 28 Ind. 374; *Lalor v. C., B. & Q. R. Co.* 52 Ill. 401; *Pittsburgh, C. & St. L. R. Co. v. Adams*, 105 Ind. 151; *Jones v. L. S. & M. S. R. Co.* 49 Mich. 573; *Mann v. Oriental Print Works*, 11 R. I. 152; *Chicago & N. W. R. Co. v. Bayfield*, 37 Mich. 205; *Broderick v. Detroit U. D. Co.* 56 Mich. 261; *Cook v. St. P., M. & M. R. Co.* 34 Minn. 45; *Dowling v. Allen*, 74 Mo. 13; *Railroad Co. v. Fort*, 17 Wall. 553; *Benzing v. Steinway*, 101 N. Y. 547; *O'Connor v. Adams*, 120 Mass. 427.

In the case in 28 Ind. 374, the court reversed the trial court on the ground that the employee, a minor, assumed the risk of his employment.    In *Pittsburgh, C. & St. L. R. Co. v. Adams*, 105 Ind. 151, the court state the rule as follows: " In all cases the master is bound to disclose to the servant latent defects and dangers of which he has knowledge, or of which he ought to have knowledge by the exercise of reasonable attention, care, and diligence, and of which the servant has no knowledge, and would not discover by the exercise of reasonable care.    This is particularly so when the master employs for hazardous and dangerous work a child, young person, or other person without experience and of immature judgment."    " In the cases last above mentioned the *gravamen* of the action is the negligence of the master in failing to give the proper warning, and in employing a person of such immature years and judgment that such warning and instructions

would furnish no protection. *And hence, in order that the master may be properly charged as being thus negligent, and made liable for resulting injury, it must be made to appear that he knew, or by the exercise of reasonable care and observation might have known, of the inexperience, disqualification, and immature judgment of the servant employed.* When a person of apparently sufficient age, physical ability, and mental caliber to perform the service, seeks an employment at the hands of a railway company or other master, he ought to be held to an implied representation that he is competent to perform the duties of the position he seeks, and competent to apprehend and avoid all dangers that may be discovered by the exercise of ordinary care and prudence. In such case we know of no good reason or rule of law that will compel the master to pass him through a critical examination to discover his competency for the place, or that will convict the master of negligence for not doing so." The court further say: "When, by the orders of the master, the servant is carried beyond his employment, he is carried away from his implied undertaking to assume the risks incident to the employment. Hence it is that when a servant is thus, by the orders of the master, put to work outside of his employment, and is injured by reason of defective machinery, railroad track, etc., without his fault, the master is liable, regardless of the care he may have exercised to keep the machinery, railroad track, etc., in a safe condition. When a servant is thus ordered at work at a particular place, or with particular machinery, etc., outside of his employment, the master impliedly assures him, not only that he has exercised reasonable care to have the place, machinery, etc., in a safe condition, but also that they are in a safe condition and fit for the business for which they are used. This principle or rule of law has been more frequently and more rigorously applied in cases of employees immature in years, judgment, and experi-

ence." "Here, again, it should be observed that the master
will not be liable if the circumstances are such as to show
that the servant is competent to apprehend the danger, and
expressly or impliedly assumes the risk."

We have cited at considerable length from this case, as it
goes as far to uphold the rule as claimed by the learned
counsel for the respondent, if not further than any of the
other cases cited by him on the argument. And in this case
the last paragraph qualifies all that is said before, and de-
stroys the rule as contended for by the learned counsel. It
leaves it, as stated above, a question of fact in all cases
whether the master is guilty of negligence in directing the
servant to do the act outside of his employment.

In *Lalor v. C., B. & Q. R. Co.* 52 Ill. 401, it was found
that the person representing the master knew that the em-
ployee whom he directed to couple the cars was unversed
and inexperienced in that business. The decision is clearly
placed on the ground that the master was guilty of negli-
gence in directing a servant to do an extra-hazardous work
whom he knew to be unskilled and inexperienced in the
business. In *Jones v. L. S. & M. S. R. Co.* 49 Mich. 573,
the person who was injured while employed in the dis-
charge of work not within the contract of his employment,
showed that he protested against doing the work. In *Chi-
cago & N. W. R. Co. v. Bayfield*, 37 Mich. 205, the instruc-
tion at the trial which was upheld as good law, was as
follows: "If you find that the deceased, at the time he was
employed by the defendant, was a lad of seventeen or eight-
een years of age, inexperienced in handling the brakes on a
train of cars such as that in question, and that he was un-
fitted for that work by reason of his unskilfulness, inex-
perience, and youth, and this was known to Smith, . . .
and was ordered by Smith, the foreman and conductor of
the construction train in question, acting for and as the
agent of said defendant, then if he was killed while endeavor-

ing to perform such work, without negligence on his part, the plaintiff was entitled to recover." In *Broderick v. Detroit U. D. Co.* 56 Mich. 261, it was held that the plaintiff was entitled to recover for a defect in the construction of a ventilator which the employee was directed to open when he received his injury, and no question appears to have been made upon the point that he was doing work outside of his ordinary employment. In *Cook v. St. P., M. & M. R. Co.* 34 Minn. 45, the negligence for which the defendant was held responsible was in not providing a suitable place for the plaintiff to do his work. The plaintiff in this case was also a minor. In *Dowling v. Allen*, 74 Mo. 13, the person injured was a boy seventeen years old, and was working in a dangerous place, and had requested the person directing his work to relieve him from the work and get some other person to perform it. The defendant was held liable, on the ground that he had not performed his duty in sufficiently instructing the servant of the danger incident to the performance of his work. All that was decided in *Mann v. Oriental Print Works*, 11 R. I. 152, was that if the servant " was suddenly called upon to perform a dangerous service, not strictly within the line of his duty, and requiring peculiar skill, there would be no presumption that he knew the risks of it, and, if so, he should not have been directed to do it without information of the nature of the service." In *Benzing v. Steinway*, 101 N. Y. 547, the recovery was sustained, on the ground that the defendant did not furnish a safe place for the performance of the work which the servant was directed to do, and not upon the ground that the service was outside of his usual employment. The rule laid down in *O'Connor v. Adams*, 120 Mass. 431, and *Railroad Co. v. Fort*, 17 Wall. 553, is stated as follows: "If the defendant knew the peril to which the servant would be exposed, and did not give him sufficient and reasonable notice of it, and he, without negligence on his part, through inex-

perience or reliance on the directions given him, failed to perceive or understand the risk, and was injured, the defendant would be responsible." This rule was laid down in cases where the servant was an inexperienced minor.

We think that it may be safely said that none of the cases cited by the learned counsel for the respondent hold that merely directing a servant to perform a duty outside of his usual employment is such negligence on the part of the employer as will render him liable for any injury the servant may receive while engaged in such employment; but, on the other hand, all the circumstances attending the case, such as the dangerous character of the work directed to be done, the age and experience or inexperience of the servant, and the knowledge of the master as to these attendant circumstances, must be taken into consideration in determining the question of negligence.

In the case at bar the plaintiff was a man of forty years and upwards, an intelligent mechanic. He had been in the employ of the railroad company for over ten years, and for several years had been the foreman of a gang of men employed in building and repairing bridges and other structures for the defendant on its road, and was so engaged at the time the accident happened. In his employment he had an engine and cars under his control, for the purpose of doing his work, and a man or men whose duty it was to couple or uncouple cars as needed in such work. At the time he was requested to do the switching in the defendant's yard, he was requested to take the engine he had in use for doing his ordinary work, and the gang of men under him, and do such work. He made no objection to doing the work on the ground that it was dangerous, or that he had not sufficient knowledge or experience to do the same safely to himself and the men under his charge. Under these circumstances it seems to us that no negligence can be attributed to the company for directing him to do the work.

He undertook the work voluntarily, knowing the general danger of the employment, and the rule applicable to work done in his ordinary employment must be applied to the work done by him under such order. If the finding of the jury that the plaintiff did not comprehend the dangers incident to the work was supported by the evidence, it cannot alter the case. That fact was not made known to the defendant at the time, and there is nothing in the evidence which would tend to show the defendant that the plaintiff had not sufficient knowledge, experience, and skill to perform the work safely to himself and those in his employ.

That the plaintiff cannot recover upon the facts proved in this case is well settled by the authorities cited by the learned counsel for the appellant. *McGinnis v. C. S. Bridge Co.* 49 Mich. 466, 8 Am. & Eng. R. Cas. 135; *Wormell v. M. C. R. Co.* 10 Atl. Rep. (Me.), 49; *Runmell v. Dilworth,* 111 Pa. St. 343, 345; *Leary v. B. & A. R. Co.* 139 Mass. 587; *Railroad Co. v. Fort,* 17 Wall. 554, 558; *Cahill v. Hilton,* 106 N. Y. 512, 518; 3 Wood, Ry. Law, 1487; Wood, Mast. & Serv. § 344; *May v. O. & Q. R. Co.* 10 Ont. 70; *Hawk v. Penn. R. Co.* 11 Atl. R. 459.

We are not called upon in this case to determine what the rule would be if the employee, when ordered to do work which his general employment did not require him to do and which was dangerous in its character, objected to doing the work on the ground of want of experience and knowledge sufficient to enable him to perform the work with safety to himself and those under him, and, notwithstanding such declaration on his part, his employer insisted upon his doing it, and thereupon he undertook to do the work after such protest, rather than subject himself to the risk of being discharged from his employment. We do not in this case either affirm or disaffirm the rule stated by the supreme court of Massachusetts in *Leary v. B. & A. R. Co.* 139 Mass. 587, upon that state of the case. All we decide in

this case is that when an employee of mature years and of ordinary intelligence and experience is directed to do a temporary work outside of the business he has engaged to do, and consents to do such work, without objection on account of his want of knowledge, skill, or experience in doing such work, no negligence of the employer can be predicated upon that state of facts alone.

There are other reasons why the plaintiff ought not to recover in this action. He was not directed to couple or uncouple cars. He was the foreman of a gang of men, having in charge an engine and some one to do the coupling and uncoupling of cars. He was directed to take the engine and his men and do the switching of some loaded cars in the defendant's yard. The order did not direct him personally to do the coupling of the cars. Again, according to the testimony of the plaintiff himself, he was not injured on account of his inexperience in coupling cars, but by reason of a defect in the car he attempted to couple to the engine. He claims, and we are inclined to think his claim is well founded, that he would not have been injured had it not been for the projecting bolt or rod which caught his glove when he attempted to withdraw his hand from the place of danger.

In no view of the case can the verdict be sustained, except upon the theory advanced by the learned counsel for the respondent, as stated above. We think the rule of liability as claimed by the learned counsel is not sustained either by authority or upon the principles of law applicable to employer and employee. Upon the undisputed evidence in the case, and upon the findings of the jury, judgment should have been rendered in favor of the appellant.

*By the Court.*— The judgment of the circuit court is reversed, and the cause is remanded with directions to render judgment for the defendant.

See note to this case in 37 N. W. Rep. 84.— REP.