## HEFFNER v. SPRAGUE ELECTRIC CO.

(Circuit Court of Appeals, Third Circuit. April 15, 1910.)

No. 47 (1,348).

1. MASTER AND SERVANT (§ 238*)—INJURIES TO SERVANT—CONTRIBUTORY NEGLIGENCE.

Plaintiff, who was employed by defendant as a tester of electric hoists which defendant manufactured, having tested a new brake which had been put on an electric hoist in defendant's factory, with knowledge that the current had been turned on and that the operator had gone into the cage from which the hoist was operated, started to descend to the gallery floor below by means of a ladder. In climbing down the ladder, plaintiff took hold of the rail on which the carriage of the hoist ran, knowing that the carriage was only six feet distant, and while his hand grasped the rail the carriage was started by the operator, and the wheels ran over and crushed his fingers. Held, that plaintiff was guilty of contributory negligence precluding a recovery.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 681, 743–748; Dec. Dig. § 238.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

177 F.—57

2. MASTER AND SERVANT (§ 197*)—INJURIES TO SERVANT—PROXIMATE CAUSE—FELLOW SERVANTS.

 The proximate cause of plaintiff's injury was the negligence of the operator of the hoist, who was plaintiff's fellow servant, for which negligence the master was not liable.

 [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 489, 490; Dec. Dig. § 197.*]

3. MASTER AND SERVANT (§ 156*)—INJURIES TO SERVANT—SCOPE OF EMPLOYMENT.

 A master is not liable for injuries to a servant merely because he was engaged in work outside the scope of his employment at the time he was injured, where the danger was neither hidden nor concealed, but was as open and obvious to the servant as to the master, and was one of which the servant had actual knowledge.

 [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 311, 312; Dec. Dig. § 156.*]

4. MASTER AND SERVANT (§ 154*)—INJURIES TO SERVANT—WARNING.

 A master was not negligent in failing to warn a servant of a danger concerning which the servant was fully informed.

 [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 308, 309; Dec. Dig. § 154.*]

In Error to the Circuit Court of the United States for the District of New Jersey.

Action by William H. Heffner against the Sprague Electric Company. Judgment for defendant, and plaintiff brings error. Affirmed.

Francis C. Lowthorp and Elwood W. Moore, Jr., for plaintiff in error.

William J. Davis and F. W. Hastings, for defendant in error.

Before BUFFINGTON, Circuit Judge, and ARCHBALD and CROSS, District Judges.

CROSS, District Judge. The Sprague Electric Company, the defendant in error, on November 4, 1907, was engaged in the manufacture of electrical hoists, motors, and generators at its factory in Bloomfield, N. J. On that date an accident happened whereby the plaintiff in error, one of its employés, was injured, and for the injury thus received he instituted a suit in the court below to recover compensatory damages. He had entered the employment of the defendant on the seventh day of the previous month as a tester of electric hoists. He also did some other work about the factory, to which reference will be made later. The defendant had erected and was using in its business at that time an elevated track, supported on two I beams running lengthwise of its shop. Upon this track ran a carriage, which supported a hoisting apparatus, equipped with a brake, which was electrically operated by an operator, who was stationed in a cage under the carriage and between the rails over which it ran. The accident happened to the plaintiff on Monday, November 4th. On the previous Saturday, he with one or two others had been sent to repair and test the brake of the carriage or to put on a new brake. He was engaged on the work during Saturday and Sunday, and on Monday, the job having been almost completed, he returned for the purpose of finally testing the brake. While the repairs were being made, the

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

electric current had been turned off, but it was on again on Monday morning. On that morning a man by the name of Marlow accompanied the plaintiff, and at the time of the accident was in the cage. After the brake had been tested and adjusted, the plaintiff picked up his tools with his right hand, and walked across the I beam from the carriage to an iron ladder reaching from the gallery floor below to, and resting against, the flange of the I beam. The carriage at the time was but six feet distant from the ladder. In climbing down the ladder backwards, the plaintiff with his left hand took hold of the rail on the top of the I beam nearest him, and, while his hand grasped the rail, the carriage was started towards the ladder by Marlow, and in its progress ran over and crushed the fingers of his hand, so that it subsequently became necessary to amputate them. The plaintiff admits that he knew the use of the rail; that the hoisting apparatus was electrically operated; that the current of electricity which operated it had been turned on; and that Marlow, the man who operated the carriage supporting the hoisting apparatus, was in the cage from which it was operated, and was ready to operate it. He also practically admitted that he told Marlow that he had completed the work. This is his language: "I probably said (to Marlow) I was through; it seems to me I did." The learned trial judge directed a judgment of nonsuit to be entered, and it is for the purpose of reviewing such judgment that this writ of error was brought. The judgment was directed on the ground that the proximate cause of the injury was the negligent act of Marlow, who was a fellow servant of the plaintiff. As soon as the court had indicated that a nonsuit must be entered for the reason stated, counsel for the plaintiff raised the point that the plaintiff when injured was engaged in work outside the scope of his employment. The judge, however, held that the facts did not warrant such a conclusion, and adhered to his original ruling.

Notwithstanding the unfortunate accident, with its resultant injury to the plaintiff, we are impelled to the conclusion that a nonsuit was properly ordered. It plainly appears from the facts that the plaintiff was guilty of contributory negligence. He had been engaged in work at the scene of the accident for parts, at least, of three days, and his usual place of work was on the gallery floor at the foot of the ladder, and only about 20 or 30 feet away from the point where he was injured. He had therefore necessarily become familiar with his surroundings, and knew, as already intimated, the use of the rail on which his hand rested when it was injured; knew that an electrically operated carriage, then standing but 6 feet away, was accustomed to pass over it; knew that the electric current had been turned on, and that Marlow, who operated the carriage, was in the cage whence it was operated, and ready at any moment to start the carriage, having probably been told by the plaintiff that he had completed his work. Under the circumstances, common prudence required either that the plaintiff himself should have notified Marlow not to start the carriage, or that he should have refrained from placing his hand upon the rail. The case of Ball v. Ransome Machinery Co., 75 N. J. Law, 477, 68 Atl. 104, seems peculiarly apposite. The facts sufficiently appear in the opinion of the court, from which the following extract is taken:

"The building contained a traveling crane, used for the purpose of moving heavy machinery. It ran upon wheels upon iron rails, supported by beams, near the roof. Plaintiff was familiar with the operation of the crane by observation, and by seeing it move during the short time that he had been employed on the building. At the time he was injured he was working upon a scaffold, and was aiding others in placing joists on the unfinished side of the building, upon which the covering of the side was to be placed. Having to nail the top of a joist at a point which, it may be assumed, he was unable to reach while standing on the scaffold, he, without raising the scaffold, or using other means to raise himself so as to perform the work without danger, stepped upon a studding above the scaffold, and there, it may be assumed, occupied a position that required him to support himself, to some extent, at least, with his left hand. In doing so he placed that hand on the top of the rail, and, the traveling crane then moving, his hand was caught under one of the wheels and injured. There was no signal given of the intention to move the crane. Upon this evidence the trial judge determined that the plaintiff showed that he had, by his conduct, subjected himself to a risk of injury which was perfectly obvious, and which he could not thus encounter without negligence. In that conclusion we concur. It is impossible to conceive that plaintiff did not know that the rail was a place of danger for him to put his hand upon. Nor was there anything to justify him in thinking that the crane would not move without notice, which might have presented a question for the jury."

The same conclusion follows, however, if we accept the view of the court below to the effect that the proximate cause of the plaintiff's injury was the negligence of Marlow, who was unquestionably a fellow servant of the plaintiff. They were both at the time of the accident, and had been previously, engaged in a common employment, under a common master. Marlow, knowing that the plaintiff had completed his work and was about to descend the ladder, ought not, as a prudent man, to have started the carriage without warning, or until he knew that the plaintiff was in a safe position. The facts above mentioned were practically undisputed, and the judge, in determining them as he did, and in directing a judgment of nonsuit, committed no error.

It is strenuously insisted, however, that at the time the plaintiff received his injury he was engaged in work he had been directed to perform outside of the scope of his employment. In our judgment, however, the work in which the plaintiff was engaged when injured was not outside of the scope of his employment. His general employment was to test hoists and hoisting apparatus, electrically operated. The work at which he was engaged when injured was repairing or putting on a new brake and testing a hoist, which was a part of the working apparatus of the factory in which he was employed. That his general employment may have been to test newly manufactured hoists and brakes does not seem to us to be essentially different from testing a hoist and brake already installed. But this is not all, for it appears from his own testimony that his general employment was not so restricted as now claimed, but, on the contrary, that he had done some wiring and piece work, and that the usual testing of hoists and brakes included lifting, power, speed, and other matters of that nature. It is not shown, therefore, that he was, when injured, engaged in work outside of the scope of his employment; but if he were, the danger to which he was exposed was in no wise hidden or concealed; it was an open and obvious danger, as open and

obvious to him as to the master, and, furthermore, one of which he had actual knowledge. Knowing his surroundings and the danger to which he was exposed, there was no duty imposed upon the master to instruct him. The master could not, so far as appears, have told him anything which he did not already know, or anything which was not open and apparent to any one of ordinary intelligence and experience.

The law pertaining to the duty of a master who puts a servant at work which is outside of the scope of his employment is so well settled that any general citation of authorities seems unnecessary. It has, however, been so clearly expressed in Reed v. Stockmeyer, 74 Fed. 186, 20 C. C. A. 381, a case decided by the Circuit Court of Appeals for the Seventh Circuit, in which Mr. Justice Harlan sat, that a quotation therefrom may be permitted:

"When the servant is required by the master to perform temporary service beyond and without the scope of that which he has engaged to do, a question of somewhat different nature is presented. The master may not lawfully expose his servant to greater risks than those pertaining to the particular service for which he has engaged, and against which the servant, through want of skill, or by reason of tender age or physical inability, could not presumably defend himself if unapprised of the danger. He is bound to warn the servant of the danger if it be not obvious, and to instruct him how it may be avoided. If, however, the servant be of mature years, and of ordinary intelligence and experience, he is presumed to know and comprehend obvious dangers. In such case the master is not liable for injury happening to the servant in the performance of dangerous work without the scope of his engagement or service merely because he has been directed by the master to perform such work. If the servant is possessed of knowledge and experience sufficient to comprehend the danger, and without objection undertakes the service, the master is not liable for injury received by the servant in such new and more dangerous employment. Cole v. Railway Co., 71 Wis. 114, 37 N. W. 84 [5 Am. St. Rep. 201]; Paule v. Mining Co., 80 Wis. 350, 50 N. W. 189; Dougherty v. Steel Co., 88 Wis. 343, 60 N. W. 274; Buzzell v. Manufacturing Co., 48 Me. 113, 121 [77 Am. Dec. 212]. The liability upon the master in cases of injury to the servant received in a dangerous employment outside of that for which he had engaged arises, therefore, not from the direction of the master to the servant to depart from the one service and to engage in the other and more dangerous work, but from failure to give proper warning of the attendant danger in cases where the danger is not obvious, or where the servant is of immature years, or unable to comprehend the danger."

It should be noted, moreover, before closing, that the plaintiff was not injured while actually engaged at the work in question, but after he had completed it, and was in the act of descending a ladder to the floor. In placing his hand upon the rail where it was injured, he exposed himself, as already stated, not only to obvious but known danger, and must accept the consequences.

The judgment will be affirmed.